******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# J. XAVIER PRYOR *v.* TIMOTHY BRIGNOLE ET AL.
## (SC 20581)
## (SC 20583)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Ecker and Prescott, Js.*

*Syllabus*

The plaintiff attorney, who previously had been employed by the defendant
law firm, L Co., sought to recover damages for breach of a contractual
nondisparagement clause in connection with anonymous letters that
the defendant B, who owned and managed L Co., allegedly sent to
various news outlets. In the letters, B identified the plaintiff, described
an incident in which the plaintiff was arrested and charged with certain
serious crimes, and opined that the plaintiff's conduct was of public
concern because it implicated his fitness to practice law. B also claimed
that the judicial system was likely to conceal the matter because the
plaintiff was an attorney. The defendants each filed a special motion to
dismiss the plaintiff's complaint pursuant to the statute (§ 52-196a (b))
permitting the trial court to dismiss a complaint that is based on, inter
alia, the opposing party's exercise of his or her constitutional right to
free speech on a matter of public concern. The trial court denied the
defendants' special motions to dismiss, however, concluding that they
could not meet their initial burden of showing, by a preponderance of
the evidence, that they were being sued because B exercised his right
of free speech, insofar as B had denied sending the anonymous letters
and, thus, had denied engaging in any speech at all. The defendants
subsequently filed with the Appellate Court separate appeals from the
trial court's denial of their special motions to dismiss. The plaintiff
moved to dismiss the appeals for lack of a final judgment, and, over
the defendants' objections, the Appellate Court granted the plaintiff's
motions and dismissed the appeals. On the granting of certification, the
defendants filed separate appeals with this court.

*Held* that the Appellate Court improperly dismissed the defendants' appeals
from the trial court's denial of their special motions to dismiss for lack
of a final judgment, and, accordingly, this court reversed the Appellate
Court's judgments and remanded the cases to the Appellate Court for
further proceedings:

The issue of whether the trial court's denial of the defendants' special
motions to dismiss filed pursuant to § 52-196a (b) could constitute an
appealable final judgment was resolved in the companion case of *Smith*
v. *Supple* (346 Conn.     ), in which this court examined the relevant
statutory text, legislative history, and analogous laws of other states,
and concluded that § 52-196a affords defendants a substantive right to
avoid litigation on the merits and that, pursuant to the second prong of
the test for determining the appealability of interlocutory orders set forth
in *State* v. *Curcio* (191 Conn. 27), an immediate appeal may be taken in
cases in which a defendant can assert a colorable claim that a trial
court's denial of a special motion to dismiss has placed at risk the right
of the defendant to avoid litigation on the merits.

In the present case, the defendants' special motions to dismiss purport-
edly invoked the protections afforded by § 52-196a insofar as the plain-
tiff's complaint was based on a right protected by that statute, namely,
B's "right of free speech," as that term is defined in § 52-196a (a) (2).

In construing § 52-196a (a) (2), which requires that the speech occur "in
a public forum on a matter of public concern," the courts of this state
have interpreted the term "public forum" to include communications to
newspapers and other traditional media outlets, and the term "matter
of public concern" to include speech about issues of economic or commu-
nity well-being and other regulatory matters, such as unethical behavior
alleged against a regulated professional, it was well established that
the commission and prosecution of a crime, and the resulting judicial
proceedings, are events of legitimate concern to the public, and it was

of no consequence that B denied writing the letters, as the initial analysis concerning whether to grant a special motion to dismiss under § 52-196a (e) (3) turns on the nature of the statements alleged in the plaintiff's complaint.

Accordingly, the defendants had asserted at least a superficially well founded claim that B's conduct of sending the letters to various news outlets concerning the arrest and prosecution of an attorney could be considered conduct furthering communication in a public forum on a matter of public concern.

(*Two justices dissenting in one opinion*)

Argued February 24 and October 12, 2022—officially released May 2, 2023**

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Budzik, J.*, denied the defendants' special motions to dismiss, from which the defendants filed separate appeals with the Appellate Court, which granted the plaintiff's motions to dismiss the appeals, and the defendants, on the granting of certification, appealed to this court, which consolidated the appeals. *Reversed*; *further proceedings*.

*Sarah F. D'Addabbo*, with whom was *Mario Cerame*, for the appellants (defendants).

*Matthew S. Blumenthal* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*William Tong*, attorney general, *Clare Kindall*, former solicitor general, *Matthew I. Levine*, assistant attorney general, and *Daniel M. Salton*, assistant attorney general, filed a brief for the state of Connecticut as amicus curiae.

*Opinion*

ROBINSON, C. J. The sole issue in these certified appeals is whether the denial of a special motion to dismiss filed pursuant to our state's anti-SLAPP[1] statute, General Statutes § 52-196a,[2] is an appealable final judgment. The defendants, Timothy Brignole and Brignole, Bush & Lewis, LLC (law firm), appeal, upon our granting of their petitions for certification,[3] from the judgments of the Appellate Court, which dismissed their appeals from the order of the trial court denying their special motions to dismiss the underlying civil action brought against them by the plaintiff, J. Xavier Pryor.[4] Specifically, the defendants claim that the Appellate Court improperly dismissed their respective appeals for lack of a final judgment because (1) the legislature expressly provided for an interlocutory appeal of the denial of a special motion to dismiss in subsection (d) of § 52-196a, and (2) the denial of a special motion to dismiss filed pursuant to the anti-SLAPP statute constitutes an appealable final judgment under the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). For the reasons set forth in the companion case that we also decide today, *Smith* v. *Supple*, 346 Conn.    ,    A.3d    (2023), we conclude that a trial court's denial of a colorable special motion to dismiss filed pursuant to § 52-196a is an appealable final judgment under *Curcio*. Accordingly, we reverse the judgment of the Appellate Court and remand the case to that court for further proceedings according to law.

The record reveals the following relevant facts and procedural history, which are undisputed for purposes of this appeal. Brignole is the owner, manager, and principal of the law firm. The law firm previously employed the plaintiff as an associate attorney. In 2015, the law firm brought a civil action against the plaintiff and another law firm in the Superior Court in the judicial district of Hartford (2015 action). In March, 2018, the plaintiff and the law firm resolved the 2015 action by executing a settlement agreement pursuant to which the plaintiff paid the law firm $45,000 in exchange for a general release of all causes of action brought or which could have been brought in the 2015 action. The settlement agreement also included a nondisparagement clause under which Brignole, in particular, agreed "to not disparage or criticize [the plaintiff] and to not do or say anything that could harm the [plaintiff's] interests or reputation . . . ."

Approximately three months later, the plaintiff was arrested and charged with assault in the third degree, in violation of General Statutes § 53a-61, and risk of injury to a child, in violation of General Statutes § 53-21, in connection with an incident in West Hartford. Thereafter, Brignole sent or caused to be sent to "various news outlets and persons" an anonymous letter bearing the headline "Attorney Beats Wife [i]n Front of

Child,'' which stated the factual basis for the charges against the plaintiff, identified the plaintiff by his name, date of birth, and office address, and opined that his conduct was a matter of public concern because it implicated his fitness to practice law and because, Brignole claimed, the judicial system was likely to cover up the matter because the plaintiff is an attorney.[5] Brignole addressed each letter with the return address of the plaintiff's law office to make it look like it was sent by a member of the plaintiff's staff.

Subsequently, the plaintiff brought this action against the defendants, claiming that Brignole's actions constituted a breach of the nondisparagement provision of the settlement agreement, could have harmed his reputation and interests, caused him to suffer economic damages, and deprived him of the benefit of the agreement.[6] The defendants thereafter filed separate special motions to dismiss the action as a SLAPP suit pursuant to § 52-196a, along with accompanying memoranda of law, in which they (1) denied the allegations in the complaint, and (2) contended that the plaintiff's breach of contract claims were based on the exercise of a right protected by the anti-SLAPP statute, namely, ''the right of free speech in connection with a matter of public concern,'' and that the plaintiff was unable to ''show probable cause that he [would] prevail on the merits of his claim.'' The plaintiff objected to the defendants' respective special motions to dismiss.

On August 24, 2020, the trial court issued a memorandum of decision denying the defendants' special motions to dismiss, rejecting their argument that ''the letters constitute[d] an exercise of free speech on a matter of public concern and, thus, [were] protected under § 52-196a.'' The court observed that the ''problem . . . [was] that [Brignole, as manager, owner, and principal of the law firm] denie[d] sending the letters at issue and, thus, denie[d] engaging in any speech at all, protected or not.'' Thus, the court determined that the defendants could not meet their ''initial burden'' under § 52-196a (e) (3) of showing, by a preponderance of the evidence, that they were being sued because Brignole exercised his right of free speech.[7] As such, the trial court denied the defendants' special motions to dismiss.

The defendants subsequently filed separate appeals from the denials of their special motions to dismiss with the Appellate Court. The plaintiff moved to dismiss each appeal for lack of an appealable final judgment. The defendants then objected, arguing that the denial of a special motion to dismiss is immediately appealable both under the plain language of § 52-196a (d) and as a final judgment under this court's decision in *State* v. *Curcio*, supra, 191 Conn. 31. The Appellate Court ultimately granted the plaintiff's motions to dismiss and rendered judgments dismissing the appeals. These certified appeals followed.[8] See footnote 3 of this opinion.

The primary issue raised in these certified appeals—namely, whether a trial court's denial of a special motion to dismiss under the anti-SLAPP statute can constitute an appealable final judgment—is identical to that considered in *Smith* v. *Supple*, supra, 346 Conn. . In that case, we examined relevant statutory text, legislative history, and analogous laws from our sister states, and concluded that our "anti-SLAPP statute affords a defendant a substantive right to avoid litigation on the merits . . . ." Id.,    ; see id.,    . We then continued to conclude that, in cases in which a defendant can assert a colorable claim that a trial court's denial of a special motion to dismiss under that statute has placed that particular right at risk, an immediate appeal may be taken pursuant to the second prong of *Curcio*. See id.,    ; see also *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 41, 213 A.3d 1110 (2019) ("[a defendant] must make at least *a colorable claim* that some recognized statutory or constitutional right is at risk" (emphasis added; internal quotation marks omitted)).

Turning to the record in these certified appeals, we now consider whether the defendants have asserted a colorable claim to the protections afforded by the anti-SLAPP statute. In particular, we must determine whether the defendants have asserted a colorable claim that Brignole's conduct, as alleged in the plaintiff's complaint, is based on the exercise of his "right of free speech," as that term has been defined by our legislature in § 52-196a (a) (2).

The statute defines the phrase "right of free speech" as "communicating, or conduct furthering communication, in a public forum on a matter of public concern . . . ." General Statutes § 52-196a (a) (2). Although the term "public forum" is not defined, the phrase "matter of public concern" is defined as "an issue related to (A) health or safety, (B) environmental, economic or community well-being, (C) the government, zoning and other regulatory matters, (D) a public official or public figure, or (E) an audiovisual work . . . ." General Statutes § 52-196a (a) (1).

A review of relevant case law reveals several Superior Court decisions that have interpreted the term "public forum," as used in the anti-SLAPP statute, to include communications to newspapers and other traditional media outlets. See, e.g., *Primrose Cos.* v. *McGee*, Superior Court, judicial district of Waterbury, Docket No. UWY-CV-21-6062747-S (August 26, 2022) (citing cases and finding that defendant's letter to editors, which was published in newspaper, was action in public forum); *Lawrence* v. *Chambers*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FST-CV-20-5022942-S (September 21, 2020) ("[t]he newspaper and television station[s] are public for[a]" in exercise of free speech); *Pacheco Quevedo* v. *Hearst Corp.*, Superior Court, judi-

cial district of Stamford-Norwalk, Docket No. FST-CV-19-5021689-S (December 19, 2019) ("[e]mbedded in anti-SLAPP laws like § 52-196a is the fundamental principle that 'news reporting activity is free speech' ").

Courts of this state, in construing our anti-SLAPP statute, have further concluded that speech that involves a "matter of public concern" includes "issues of economic or community [well-being] . . . and other regulatory matters . . . . This would appear to include unethical behavior alleged against a regulated professional. As to an allegation of illegal behavior, [i]t is well established that [t]he commission of [a] crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public . . . . Indeed, [p]ublic allegations that someone is involved in crime generally are speech on a matter of public concern." (Citation omitted; internal quotation marks omitted.) *Rockoff* v. *Annulli*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-20-6122116-S (July 10, 2020) (70 Conn. L. Rptr. 39, 40); see, e.g., *Noble* v. *Hennessey*, Superior Court, judicial district of New London, Docket No. KNL-CV-20-6045166-S (January 12, 2021) (attorney grievance complaint was related to matter of public concern because legal profession is regulated and complaint alleged unethical behavior); *Rockoff* v. *Annulli*, supra, 70 Conn. L. Rptr. 40 (allegations of unethical and criminal behavior by regulated professional concerning private real estate transaction involved matters of public concern); see also *Graves* v. *Chronicle Printing Co.*, Superior Court, judicial district of Tolland, Docket No. CV-18-5010056-S (November 7, 2018) (67 Conn. L. Rptr. 442, 446) ("[p]ublishing articles concerning the arrest and prosecution of a person accused of harming children certainly satisfies the statutory definitions of 'free speech' and 'matter of public concern' "); cf. *Gleason* v. *Smolinski*, 319 Conn. 394, 412, 125 A.3d 920 (2015) (" '[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community . . . or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public' ").

Although the pertinent case law is less developed, courts in other jurisdictions presented with similarly worded anti-SLAPP statutes have also considered the merits of special motions to dismiss, even in cases in which the defendant has denied making all or some of the underlying statements alleged. Those courts have reasoned, as the defendants in the present case initially argued, that an initial analysis under their states' respective anti-SLAPP statutes should turn on the nature of the statements alleged in the complaint. See *Spirtos* v. *Yemenidjian*, 137 Nev. 711, 714, 499 P.3d 611 (2021) (concluding, under similarly worded statute, that "[the defendant's] denial that he made the alleged statement

[was] irrelevant to step one of the anti-SLAPP analysis" (emphasis omitted)); *Hersh* v. *Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (dismissal under Texas' anti-SLAPP statute was not precluded by fact that defendant denied making statements at issue because "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations," and, "[w]hen it is clear from the plaintiff's pleadings that the action is covered by the [anti-SLAPP statute], the defendant need show no more").

Because the issue before us is limited to whether the defendants in the present case have asserted a *colorable* claim to the protections afforded by our state's anti-SLAPP statute, as required to obtain an immediate review of the trial court's denial of their special motions to dismiss under the second prong of *Curcio*, we need not determine whether any of the foregoing persuasive authority is either factually distinguishable or legally correct. A showing of colorability in this context, although meaningful, presents a lower bar. See, e.g., *In re Santiago G.*, 325 Conn. 221, 231, 157 A.3d 60 (2017) ("A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid . . . . For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he *might* prevail." (Citation omitted; emphasis in original; internal quotation marks omitted.)). The existence of the previously cited case law affords the defendants with at least a superficially well founded claim that the conduct alleged in the plaintiff's complaint—namely, Brignole's sending letters to "various news outlets and persons" concerning the arrest and prosecution of an attorney— could be considered conduct furthering communication in a public forum on a matter of public concern. Cf. *Graves* v. *Chronicle Printing Co.*, supra, 67 Conn. L. Rptr. 446 (police officer's sending statements to newspaper concerning allegations of criminal behavior fell within scope of anti-SLAPP statute, as officer was "furthering communication, in a public forum on a matter of public concern" (internal quotation marks omitted)).

Accordingly, we conclude that the trial court's denial of the defendants' colorable special motions to dismiss under § 52-196a constitutes an appealable final judgment under *Curcio*.[9] The Appellate Court, therefore, improperly dismissed the defendants' respective appeals for lack of a final judgment.[10]

The judgments of the Appellate Court are reversed and the cases are remanded to that court for further proceedings according to law.

In this opinion McDONALD, MULLINS and PRESCOTT, Js., concurred.

* This case originally was argued on February 24, 2022, before a panel consisting of Chief Justice Robinson, and Justices McDonald, D'Auria, Mullins and Ecker. Thereafter, the court sua sponte ordered that the case be reargued on October 12, 2022, before that same panel. Subsequently, Judge

Prescott was added to the panel. He has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

** May 2, 2023, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] "SLAPP is an acronym for strategic lawsuit against public participation . . . ." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,      U.S.     , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

[2] General Statutes § 52-196a provides in relevant part: "(b) In any civil action in which a party files a complaint, counterclaim or cross claim against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint, counterclaim or cross claim.

* * *

"(d) The court shall stay all discovery upon the filing of a special motion to dismiss. The stay of discovery shall remain in effect until the court grants or denies the special motion to dismiss and any interlocutory appeal thereof. Notwithstanding the entry of an order to stay discovery, the court, upon motion of a party and a showing of good cause, or upon its own motion, may order specified and limited discovery relevant to the special motion to dismiss.

* * *

"[e] (3) The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint, counterclaim or cross claim sets forth with particularity the circumstances giving rise to the complaint, counterclaim or cross claim and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint, counterclaim or cross claim. . . ."

[3] We granted the defendants' petitions for certification to appeal to consider whether the Appellate Court properly dismissed their respective appeals from the trial court's denial of their special motions to dismiss pursuant to § 52-196a for lack of a final judgment. See *Pryor* v. *Brignole*, 336 Conn. 941, 249 A.3d 353 (2021); *Pryor* v. *Brignole*, 336 Conn. 933, 248 A.3d 3 (2021). This court subsequently consolidated the defendants' certified appeals and ordered joint briefing. See Practice Book § 61-7 (b) (1).

[4] We note that the plaintiff declined to exercise his right to briefing and oral argument in this consolidated appeal and that we granted permission to the state of Connecticut and the Connecticut Trial Lawyers Association to file briefs as amici curiae.

[5] Specifically, the letter provided in relevant part: "To Whom It May Concern:

"On June 10, 2018 [the plaintiff] ([o]ffice, 525 Windsor [Avenue], Windsor, CT) was arrested in West Hartford . . . on charges of [a]ssault [in the third] [d]egree 'with intent to cause grave physical injury' and [r]isk of [i]njury to a [m]inor, a [c]lass C [f]elony. While driving a car in West Hartford with his young child in the back seat, [the plaintiff] got in an argument with his wife and he punched her in the face. When he stopped the car, she fled to an adjacent store and called [the] police. The police observed [that] she had a swollen eye from being punched.

"Under [rule 8.4 of the] Connecticut Rules of Professional Conduct . . . it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the fitness of a lawyer. Commentary: [l]awyers are subject to discipline when they violate these rules and 'offenses involving violence, dishonesty and breach of trust are in that category.'

"I bring this to your attention out of public concern and under your watchful eye of enforcing the rules and public mandates. The fact that [the plaintiff] is a lawyer going around assaulting people reflects badly on the legal community as a whole. As a lawyer in the Hartford [c]ourts he is held to a high standard of public trust. His [w]ife and [c]hild are real victims and he needs to be held accountable. Just because he is a lawyer the system will try to cover this up. You are our [v]ictims' [a]dvocates. Help us please."

[6] The plaintiff also filed an attorney grievance against Brignole, claiming

that Brignole's actions violated several Rules of Professional Conduct. The Hartford Judicial District Grievance Panel for Geographic Area 13 and the city of Hartford reviewed the complaint and the proffered defenses and determined that no probable cause existed that Brignole had committed professional misconduct by sending the letters.

[7] In so concluding, the trial court rejected the defendants' argument "that the court should simply assume [that] the allegations of the complaint are true for purposes of the motion, as may be done, in some circumstances, on a motion to dismiss pursuant to Practice Book § 10-30." The court determined that "[§] 52-196a (e) (3) plainly sets forth a requirement that the moving party must establish his right to the special protections of the statute by the presentation of actual facts, not assumptions valid only for purposes of the [special] motion [to dismiss]."

[8] On February 1, 2022, this court ordered supplemental briefing on the issue of "whether the Appellate Court's dismissal of [the law firm's] appeal . . . can be affirmed on the alternative ground that the Appellate Court lacked subject matter jurisdiction to consider the appeal because [the law firm] failed to amend its appeal under Practice Book § 61-9 to include the trial court's November 18, 2020 ruling denying its special motion to dismiss." (Internal quotation marks omitted.) Having reviewed the record in this case as a whole, we conclude that the trial court's November 18, 2020 ruling is most fairly characterized as an articulation clarifying that it had previously denied the law firm's special motion to dismiss—for the same reason as Brignole's—in its initial ruling dated August 24, 2020. The trial court's articulation, which was issued in response to a sua sponte order from the Appellate Court, does not appear to us to constitute a separate, substantive decision on the merits of the law firm's underlying motion to dismiss so as to require an amended appeal under Practice Book § 61-9. See, e.g., *In re Santiago G.*, 325 Conn. 221, 232–33, 157 A.3d 60 (2017) (noting that "the well established rule that every presumption is to be indulged in favor of jurisdiction" extends to appellate proceedings (internal quotation marks omitted)). But cf. *Gibson* v. *Jefferson Woods Community, Inc.*, 206 Conn. App. 303, 304–305 n.1, 260 A.3d 1244 (given plaintiff's failure to file amended appeal, Appellate Court lacked jurisdiction over appeal from trial court's subsequent granting of motion to dismiss filed by codefendant, when existing appeal was limited to granting of motion to dismiss filed by different defendant, despite fact that motions were granted on "same bases" (internal quotation marks omitted)), cert. denied, 339 Conn. 911, 261 A.3d 747 (2021); *Juliano* v. *Juliano*, 96 Conn. App. 381, 386, 900 A.2d 557 (Appellate Court lacked jurisdiction over appeal from denial of motion to open conversion and fraud judgment, filed subsequent to original appeal from that judgment, because, "[i]f [the party] desired appellate review of the court's denial of his motion to open, he should have filed an appeal form indicating such intention or amended the existing form"), cert. denied, 280 Conn. 921, 908 A.2d 544 (2006).

[9] We note that the trial court's decision in the present case focused exclusively on the first step of the burden shifting analysis set forth in § 52-196a (e) (3). As a result, we express no opinion on the various other aspects of this case, such as issues of contractual waiver and causation, which are more properly considered under the second step of § 52-196a (e) (3). See, e.g., *Thompson* v. *Inglewood Unified School District*, Docket No. B264151, 2016 WL 5462850, *5 n.4 (Cal. App. September 29, 2016) (finding that defendants had met their burden under step one of California's anti-SLAPP statute and noting that whether speech violated nondisparagement clause was issue addressed in probability of prevailing on claims analysis under step two).

[10] The dissent posits that we should "not saddle the Appellate Court with a remand" in this case because of the several novel issues that this case presents. Footnote 3 of the dissenting opinion. We disagree. We note that transfer remains available as an appropriate means for addressing—without additional delay—any novel constitutional or statutory issues that are presented with respect to the merits of this appeal. See Practice Book § 65-1.